[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS
On August 27, 1996, the plaintiff, John Duncan, filed a sixteen count complaint against the defendants. The named defendants are Junior Achievement, Inc. (Junior Inc.) and several of its officers and/or agents. Junior, Inc. moves to dismiss all of counts six, ten, eleven, fourteen, fifteen, and sixteen, and portions of counts seven, eight, and nine, on the ground that the court lacks subject matter jurisdiction because the claims therein are preempted by the federal Employee Retirement Income Security Act (ERISA).[1]
 I
The plaintiff's claims spring from an employment relationship with Junior, Inc. The complaint alleges that on or about December 2, 1991, Junior, Inc. hired the plaintiff as President and CEO. On January 17, 1995, the defendants terminated their employment relationship with the plaintiff.
The plaintiff claims that while employed with Junior, Inc. he participated in the Junior Achievement Retirement Plan. Under the plan, a Junior Inc. employee could designate a percentage of his or her salary for contribution to his or her retirement account, CT Page 6241 and Junior, Inc. would match all employee contributions up to 6.3% of the employee's salary. The payroll department would deduct the employee contribution and deposit the contribution into the employee's retirement account. The plaintiff alleges that weekly payroll deductions of 2% were deducted from the plaintiff's salary in December, 1994, and January, 1995 and that said deductions, and Junior, Inc.'s matching contribution, were not deposited into the plaintiff's retirement account. In count six, the plaintiff claims that the defendants are responsible for said funds under the tort theory of conversion. In count ten, the plaintiff alleges that the defendants' failure to make said contributions into the plaintiff's retirement account constitutes a breach of contract. In count eleven, the plaintiff alleges that the defendants' failure to make said contributions constitutes unjust enrichment.
The plaintiff further claims that Junior, Inc.'s employee manual, entitled "Personnel Policies and Procedures", states that Junior, Inc. provides its employees certain benefits upon termination of employment, regardless of whether the termination is voluntary or involuntary. More specifically, the manual states that upon an involuntary termination, Junior, Inc. will pay its President for all unused vacation and personal days, and provide one month's severance pay. The plaintiff alleges that he was not paid these sums. In count seven, the plaintiff claims that the defendants' failure to pay said sums due violates General Statutes §§ 31-76k and 31-71c(b). In count eight, the plaintiff alleges that the defendants breached their contract with the plaintiff by failing to pay said sums. In count nine, he claims that the defendants' failure to pay said sums constitutes unjust enrichment.
In count fourteen, the plaintiff alleges that the defendants violated the notification clause of COBRA, 29 U.S.C. § 1166
(a)(1), by miscommunicating the status of the plaintiff's coverage under the defendants' health and life insurance program. He further claims that the defendants provided the plaintiff conflicting information regarding his right to continue his health insurance coverage. As a consequence of the defendants failing to properly comply with COBRA's notification requirements, the plaintiff claims to have incurred medical expenses which would have otherwise been covered under the company's medical plan. In count fifteen, the plaintiff alleges that the defendants violated General statutes § 38a-537 by failing to properly notify the plaintiff of the cancellation or CT Page 6242 discontinuation of his health and life insurance benefits.
In count sixteen, the plaintiff alleges that the defendants had a duty to provide him with correct and accurate information pertaining to the continuance and/or termination of his health insurance benefits. The plaintiff alleges that the defendants were negligent in the manner in which they notified the plaintiff regarding the status of his family's health insurance coverage. Additionally, the plaintiff claims that the defendants' acts of misfeasance and/or nonfeasance were done with reckless disregard of the probability of causing the plaintiff emotional distress, and the defendants' acts caused the plaintiff severe and extreme emotional distress.
 II
A motion to dismiss is proper if there is a lack of subject matter jurisdiction. See, e.g., Ambroise v. William Raveis RealEstate Inc., 226 Conn. 757, 759-60, 628 A.2d 1303 (1993). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Id., 764-65. "A motion to dismiss tests . . . whether, on the face of the record, the court is without jurisdiction." Upson v. State,190 Conn. 622, 624, 461 A.2d 991 (1983). In deciding a motion to dismiss, the court should follow the "established principle that every presumption is to be indulged in favor of jurisdiction."LaConche v. Elligers, 215 Conn. 701, 709-10, 579 A.2d 1 (1990).
 III A
Before considering whether a state claim is preempted by ERISA, the court must first determine whether the employee benefit plan at issue is a plan that is regulated by ERISA. SeePeckham v. GEM State Mutual of Utah, 964 F.2d 1043, 1046 (10th Cir. 1992). Where there is no "plan" within the meaning of ERISA, there is no right of action under ERISA. Taagart Corp. v. Lifeand Health Benefits Administration, Inc., 617 F.2d 1208, 1211-12
(5th Cir. 1980), cert. denied, 450 U.S. 1030, 101 S.Ct. 1739,68 L.Ed.2d 225 (1981); see also Hansen v. Continental Ins. Co.,940 F.2d 971, 976 (5th Cir. 1991). ERISA "subjects to federal regulation plans providing employees with fringe benefits. [It] is a comprehensive statute designed to promote the interests of CT Page 6243 employees and their beneficiaries in employee benefit plans. . . . The term `employee benefit plan' is defined as including both pension plans and welfare plans." (Citations omitted.) Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90-91,103 S.Ct. 2890. 2896, 77 L.Ed.2d 490 (1983); see also 29 U.S.C. § 1002
(2)(A) (defining employee pension benefit plan) § 1002 (1) (defining employee welfare benefit plan). Section 1003 of the Act provides that a plan is not regulated under ERISA unless it is an employee benefit plan established or maintained by an employer or by an employee organization or both. 29 U.S.C. § 1003
(a) (1985).
The court concludes that the plan in question is an "employee welfare benefit plan" and thus regulated under ERISA. In the employee manual, Junior, Inc. assumes responsibility to provide its employees with medical, life, and dental insurance. (Plaintiff's Exhibit D, p. 2-3). See Taggart Corp. v. Life Health Benefits Administration, supra, 617 F.2d 1211. Moreover, Junior, Inc.'s retirement, medical, life, and dental plans demonstrate the company's intent to provide benefits on a regular and long term basis for its' employees. See Wickman v.Northwestern National Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990), cert. denied, 498 U.S. 1013, 111 S.Ct 581;112 L.Ed.2d 586.
 B
The question remains: Which, if any, of the plaintiff's claims are preempted by ERISA? "The preemption provision of ERISA, 29 U.S.C. § 1144 (a) (1994), preempts any state law that `may now or hereafter relate to any employee benefit plan . . . .' (Emphasis added.)" (Footnote omitted.) Napoletanov. Cigna Healthcare of Connecticut, Inc., 238 Conn. 216, 233-34,680 A.2d 127 (1996). Consequently, the courts resolution of the question turns on whether the plaintiff's claims "relate to" the employee benefit plans offered by Junior, Inc. See id., 234.
In Napoletano, the court reviewed federal caselaw which analyzed the phrase "relate to"; see id., 235-43; and concluded that Erisa preempts state claims that relate to the administration of employee benefit plans, that is, claims that "attempt to prescribe the substantive administrative aspects of the plan, such as a determination of an employee's eligibility, the nature and amount of employee benefits, the amount of an employer's contribution to a plan, and the rules and regulations CT Page 6244 under which the plan operates. See, e.g., New York StateConference of Blue-Cross Blue Shield Plans v. Travelers Ins.Co., [115 S.Ct. 1671, 1683, 131 L.Ed.2d 695
(1995)]; . . . ." (Citations omitted.) Id., 243-44. The court also stated that in the case before it "preemption of the plaintiffs' claims would not further the purpose of ERISA preemption, which is to permit the creation of a uniform body of employee benefit law and avoid multiple regulatory schemes. . . . Requiring [the defendant] to enforce a plan that it has established according to law does not interfere with the adoption of uniform administrative practices." (Citations omitted.) Id., 249.
In the present case, the claims asserted in counts six, eight, nine, ten, and eleven do not require the defendants to operate the plans differently; they do not force a plan to adopt a certain scheme of substantive coverage; they do not force the defendants to adopt certain types of plans; what coverage to offer, or whom to cover; instead, the claims only seek the enforcement of a plan that the defendants established. SeeNapoletano v. Cigna Healthcare of Connecticut, Inc., supra.238 Conn. 244. Moreover, preemption of the claims would not further the purpose of ERISA. Thus, the claims asserted in counts six, eight, nine, ten, and eleven do not "relate to" employee benefit plans within the meaning of ERISA's preemption provision. The court denies the motion to dismiss said counts.
Counts fourteen, fifteen and sixteen, however, do relate to an Erisa plan, and are dismissed as preempted. In count fourteen, the plaintiff alleges that the defendants violated the notification clause of COBRA, 29 U.S.C. § 1166 (a)(1), by miscommunicating the status of the plaintiff's coverage under the defendants' health and life insurance program. Title 29 U.S.C. § 1132
(e) provides that "[e]xcept for actions under section (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the secretary or by a participant, beneficiary, fiduciary. . . . State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section." Those suits as to which ERISA recognizes concurrent state court jurisdictions, pursuant to subsection (a)(1)(B) are civil actions "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, CT Page 6245 or to clarify his rights to future benefits under the terms of the plan[.]" The plaintiff's claim is not an action brought by a participant or beneficiary against a plan or an administrator seeking to recover benefits due to him under the terms of the plan. The claim is therefore not an action under 29 U.S.C. § 1132
(a)(1)(B). Consequently, the court lacks subject matter jurisdiction to hear a claim based on a violation of 29 U.S.C. § 1166
(a)(1).
Count fifteen of the plaintiff's complaint is based on the defendants' failure to properly notify the plaintiff of cancellation or discontinuation of his health and life insurance benefits pursuant of General Statutes § 38a-537. The plaintiff's claim of negligence and extreme emotional distress asserted in count sixteen are also based on the defendant's failure to inform the plaintiff about the cancellation of his life insurance benefits. Subsection (a) of General Statutes §38a-537 requires employers providing group health insurance coverage for its employees to "furnish each insured employee, upon cancellation or discontinuation of such health insurance, notice of the cancellation or discontinuation of such insurance." The notice must be "mailed or delivered to the insured employee not less than fifteen days next preceding the effective date of cancellation or discontinuation." General Statutes 38a-537 (a). Subsection (b) of General Statutes § 38a-537 provides that an employer who "fails to furnish notice pursuant to subsection (a) of this section . . . shall be liable for benefits to the same extent as the insurer, hospital or medical service corporation or health care center would have been liable if coverage had not been canceled or discontinued."
The Department of Labor issued an opinion (Defendant's Exhibit A) in which it concluded that "subsections (a), (b), and (c) of section 38a-357 are preempted by ERISA insofar as they are applied, directly or indirectly, to employee benefit plans covered by Title I of ERISA." U.S. Dept. of Labor Adv. Op. to Ms. Sherry L. Dominick (February 22, 1996). In its opinion, the Labor Department stated that "[a]lthough ERISA does not specify when or how an employer must notify employees about the termination of a welfare plan, an ERISA fiduciary[2] has a duty not to misrepresent to employees that a plan continues to exist after the plan has been terminated without notice to employees." Id., citing In Re Unisys Corp. Retiree Medical Benefit "ERISA"Litigation, 57 F.3d 1255 (3rd Cir. 1995), cert. denied,116 S.Ct. 316, 134 L.Ed.2d 470. "Section 404(a)(1) of ERISA provides that CT Page 6246 `a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." Re Unisys Corp. Retiree Medical Benefit"ERISA" Litigation, supra, 57 F.3d 1261. The third circuit has held "that in the exercise of these duties, the fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed." Id. Furthermore, the "fiduciary's duty to inform `entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful'" Id., 1262. A violation of General Statutes § 38a-537 is based on the employer's failure to inform the employee about the cancellation of his insurance policy. The third circuit has found that a fiduciary has an affirmative duty under ERISA to inform when he knows that silence might be harmful. Since the plaintiff's General Statutes §38a-537 and negligence claims are based on the same duty to inform that may give rise to a violation of a fiduciary duty claim under ERISA, the plaintiff's claims are preempted by § 404(a)(1) of ERISA.
SKOLNICK, J.