Jacobson v. Healthsource, Inc.        CV-97-157-JD  08/12/97
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE

Christopher Jacobson

        v.                              Civil No. 97-157-JD

Healthsource, Inc., et al.


                             O R D E R


     The plaintiff, Christopher Jacobson, filed this class action
in state court against the defendants, Healthsource, Inc. and
Healthsource Insurance Group, alleging that the defendants, by
obtaining capitation agreements with health care providers,
violated New Hampshire's consumer protection act, breached
contracts with health insurance policy subscribers
("subscribers") such as the plaintiff, and tortiously interfered
with subscribers' contracts.  In addition, the plaintiff alleges
that the defendants fraudulently concealed their practices from
subscribers.  The defendants removed the action to federal court,
asserting that the claims are governed by the Employee Retirement
Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.
Before the court is the plaintiff's motion to remand the case to
state court (document no. 6).


                            Background
     The plaintiff has been an employee of Monadnock Community

Hospital ("MCH") since 1986.  As an employee of MCH, he was able to choose between at least two options of group health insurance policies obtained by MCH for its employees and offered to employees as a package of benefits (the "MCH plan").  In 1995, after having previously exercised the HMO insurance option, he selected health insurance with defendant Healthsource Insurance Group, a subsidiary of defendant Healthsource, Inc.  The terms of that insurance required the plaintiff, after he met a fixed deductible, to pay twenty percent of the cost of health care services and the defendants to pay the remaining eighty percent.

The group health insurance policy is issued to MCH rather than the plaintiff or any individual employee.  Only employees of MCH, their spouses, and dependents are eligible for coverage under the MCH plan.  The plaintiff has not disputed that, in addition to health insurance, MCH also makes available to its employees a hospital cafeteria plan, a dependent care assistance plan, a dental care plan, a long-term disability plan, and a life insurance plan.

The gravamen of the plaintiff's complaint is that without his knowledge the defendants entered into capitation agreements with health care providers through which the providers agreed to provide necessary health care services to all subscribers in the area who needed medical care.  In return, the defendants paid a

fixed fee based on the total number of subscribers in each provider's service area, regardless of the amount of health care services ultimately required by subscribers in that area. The plaintiff alleges that by obtaining a flat rate for the provision of medical services for its subscribers the defendants reduced their cost of providing the plaintiff with medical care. However, rather than passing these savings on to the plaintiff, the defendants continued to charge him twenty percent of the purported "cost" of care as determined by health care providers despite the fact that the amount he was charged was in excess of twenty percent of the actual cost to the defendants of providing those services.

After the plaintiff filed his complaint in state court, the defendants removed the case to federal court, asserting that the MCH plan, and thus the plaintiff's claims relating to the plan, were governed by ERISA. On April 7, 1997, the plaintiff moved to remand the case to state court, denying that the MCH plan is governed by ERISA.

## Discussion

ERISA creates exclusive federal jurisdiction over actions within its scope. See 29 U.S.C.A. § 1132(e) (West 1985 & Supp. 1997). It does so, in part, by preempting state laws that

3

"relate to any employee benefit plan," unless those laws are specifically saved from preemption. Id. § 1144(a). Because of ERISA's broad preemption provisions, if an employee benefit plan falls within the scope of ERISA, federal jurisdiction over claims relating to such a plan is proper whether the claim is plead as an ERISA claim or not. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987).[1]

An "employee benefit plan" is "any plan, fund, or program established or maintained by the employer . . . to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants . . ., through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits." Id. § 1003(a). To qualify as an employee benefit plan under ERISA, a plan must have the following five elements:

> (1) a plan, fund or program (2) established or
> maintained (3) by an employer or by an employee
> organization, or by both (4) for the purpose of
> providing medical, surgical, hospital care, sickness,

---

[1] The court does not reach the issue of preemption in this order because the parties have not addressed the issue in the plaintiff's motion to remand. The defendants have filed a motion to dismiss the plaintiff's claims on the grounds that they are preempted by ERISA but the plaintiff has not yet responded. The court will address the preemption issue when it takes up the motion to dismiss.

4

accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1370 (11th Cir. 1982) (en banc)).

The plaintiff contends that the MCH plan is an ERISA plan, inter alia, by relying on Taggart Corp. v. Life & Health Benefits Admin., Inc., 617 F.2d 1208 (5th Cir. 1980), to argue that the MCH plan represents a bare purchase of insurance not covered by ERISA. However, the plaintiff's reliance on Taggart is misplaced. In Wickman, the First Circuit noted that Taggart presented an unusual factual situation where the employer did no more than "advertise" independent insurance for a single employer, stating the following:

> The plaintiff's basic assertion that a mere purchase of insurance does not constitute a plan is correct, though in this case there is more than a mere purchase of insurance. In Taggart, relied upon by the [plaintiff], the employer acted solely as a channel for payments from the employee to a trust fund which purchased the group insurance. The employer "neither directly nor indirectly own[ed], control[led], administer[ed], or assume[d] responsibility for the policy or its benefits." Id. All it did was deduct funds from the employee's pay check, and transfer funds to the trust fund. Significantly, there was only one employee covered under that insurance, the employer's only employee.

5

> Taggart, thus, does not stand for the proposition "that an employer or employee organization that only purchases a group health insurance policy or subscribes to a [multiple employer trust] to provide health insurance to its employees or members cannot be said to have established or maintained an employee welfare benefit plan." Donovan [v. Dillingham, 688 F.2d 1367, 1375 (11th Cir. 1982).] In fact, "the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." Id. at 1373. Taggart is merely a recognition that ERISA is not intended to cover situations where the employer merely "advertises" insurance, and then makes voluntary deductions from employees' paychecks. See 29 C.F.R. § 2510.3-1(j).
>
> The crucial factor in determining if a "plan" has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis.

Wickman, 908 F.2d at 1082-83 (alteration in original). The instant case more closely resembles Wickman than Taggart because MCH did more than simply advertise independent insurance to its employees. Furthermore, the continued viability of Taggart is itself in doubt. See Russo v. Abington Mem'l Hosp., 881 F. Supp. 177, 180-81 (E.D. Pa. 1995) (discussing subsequent treatment of Taggart by Fifth and Eleventh Circuits and noting that no other circuit has accepted proposition that bare purchase of health insurance cannot create ERISA employee benefit plan). Guided by Wickman, the court concludes that the central inquiry in deciding whether or not the MCH plan is an employee benefit plan within the meaning of ERISA is whether the employer intended to provide

6

benefits for employees on a regular and long-term basis.  <u>See</u>

<u>Wickman</u>, 908 F.2d at 1083.[2]

---

The plaintiff makes two additional arguments that are also inapposite.  He contends that "if the plaintiff's group health policy was governed by ERISA, then it is unlikely that the Policyholder/Employer Provisions would state an intention to comply with all state laws regarding the benefits provisions of the plan."  Pl.'s Resp. to Defs.' Opposition to Mot. to Remand at 2.  The plaintiff reasons that, because ERISA plans need not comply with state law, an expressed intention to comply with state law indicates a recognition that the MCH plan was not an ERISA plan.  The plaintiff also urges that if the MCH plan was governed by ERISA, it is reasonable to assume that the defendants would conform to the requirements of ERISA.  The plaintiff asserts that the plan does not comply with the requirements of ERISA, because (1) neither the summary plan description nor the group subscriber agreement includes the name and type of administration of the employee welfare plan; (2) the group subscriber agreement does not include the name and address of the plan administrator; and (3) the group subscriber agreement fails to indicate in a manner calculated to be understood by a reasonable participant that the administrative remedies provided by the plan must be exhausted prior to filing a lawsuit.  From these failures, the plaintiff concludes that the defendants either committed numerous violations of ERISA or the plan is not governed by ERISA.  The plaintiff reasons that, because the defendants are experienced with ERISA plans, the various failures of the defendants to comply with the requirements of ERISA must indicate that the defendants did not intend the plan to be covered by ERISA.

The plaintiff's arguments, while perhaps providing some circumstantial evidence that the MCH plan was not intended to be an ERISA plan, are not dispositive because they address a concern that is at best collateral.  As <u>Wickman</u> makes clear, the relevant inquiry is not whether the employer availed itself or intended to avail itself of ERISA's benefits and attendant requirements, but whether the employer intended to provide benefits to employees on a regular and long term-basis.  <u>See</u> <u>Wickman</u>, 908 F.2d at 1083.  The mere failure of the defendants or MCH to comply with the requirements of ERISA does not mean that the MCH plan is not an ERISA plan.

7

The court must determine whether or not the MCH plan meets the five-part test for an ERISA plan set forth in Wickman. See id. at 1082. Here, as in Wickman, only the first and second elements of that test are seriously challenged by the plaintiff, because he has not contested that the group health insurance plan was issued by the defendants to the plaintiff's employer, MCH, for the purpose of providing the plaintiff and other employees with medical insurance. Furthermore, it is well-established that "the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." Id. at 1083 (quoting Donovan, 688 F.2d at 1373). The record before the court indicates that MCH provided the plaintiff and other employees a choice of health insurance options throughout the plaintiff's employment at MCH. In addition, MCH offered its employees a range of other benefit options. Therefore, the court finds that the MCH plan was established by MCH with the intent of providing benefits to employees on a regular and long-term basis, bringing it within the definition of an employee benefit plan as denoted by ERISA. Because the plaintiff's claims allege, inter alia, that the defendants violated the terms of the MCH plan, they "relate to" an employee benefit plan within the meaning of ERISA, making federal jurisdiction over this case proper.

## Conclusion

For the reasons stated above, the plaintiff's motion to remand this action to state court (document no. 6) is denied. The plaintiff's response to the defendants' motion to dismiss is due twenty days after the date of this order.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

August 12, 1997

cc:  Paul McEachern, Esquire
     Christopher Cole, Esquire